**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| DONALD R. PEVIA, | * | |
| Plaintiff | * | |
| v. | * | Civil Action No. ELH-21-111 |
| ASSISTANT WARDEN GREGORY WERNER, *et al.*, | * | |
| | * | |
| Defendants | | |

\*\*\*

**MEMORANDUM**

On December 14, 2021, I entered a Memorandum (ECF 22) and Order (ECF 23), granting defendants' dispositive motion, dismissing the Complaint as to Defendants Werner, Hill, and Roderick and granting summary judgment as to defendant Whiteman. ECF 22 and 23. Plaintiff has filed a timely Motion to Alter or Amend the Memorandum and Order. ECF 25 (the "Motion").

In rejecting plaintiff's claims, I found that the defendants were immune from suit in their official capacity and that plaintiff failed to allege any personal participation by defendants Hill, Werner, and Roderick regarding the alleged denial of Native American worship. ECF 22 at 19. Further, I found that plaintiff's claim that Roderick mishandled his Administrative Remedy Procedure ("ARP") request was unavailing (*id*. at 22); he failed to state an Eighth Amendment or due process claim, and was not entitled to injunctive relief. *Id*. at 25.

In rejecting plaintiff's First Amendment claim, I said in pertinent part, ECF 20-24:

> "Lawful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system." *O'lone v. Estate of Shabazz*, 482 U.S. 342, 348 (1987). Nevertheless, prison inmates retain a right to reasonable opportunities for free exercise of religious beliefs without concern for the possibility of punishment. *See Cruz v. Beto*, 405 U.S. 319, 322 (1972). But, that retained right is not unfettered. Prison restrictions that impact on the free exercise of religion, but which are related to legitimate penological objectives, do not run afoul of the Constitution. *See*

*Turner v. Safely*, 482 U.S. 78, 89-91 (1987).

The test to determine if the restrictions are justified requires examination of whether there is a rational relation between the asserted governmental interest and the regulation in question. In addition, this court must examine whether there are alternative means of exercising the right asserted; whether accommodation of the right will impact the orderly operations of the prison; and whether readily available alternatives to the regulation would be less restrictive.

As a threshold matter, to state a claim for violation of rights under the Free Exercise Clause, Pevia must allege that: (1) he holds a sincere religious belief; and (2) a prison practice or policy places a substantial burden on his ability to practice his religion. *See Wilcox v. Brosn*, 877 F. 3d 161, 168 (4th Cir. 2017) (citing *Thomas v. Review Bd. of Ind. Emp't Sec. Div.*, 450 U.S. 707, 718 (1981)). A substantial burden is placed upon a prisoner's religious exercise when it "put[s] substantial pressure on an adherent to modify his behavior and to violate his beliefs." *Thomas*, 450 U.S. at 718. But, as indicated, prison restrictions that impact on the free exercise of religion, which but are related to legitimate penological objectives do not run afoul of the constitution. *See Safely*, 482 U.S. at 89-91.

Pevia does not allege or show that the three week disruption in services compromised his religious beliefs.

Courts have regularly held that the occasional failure to provide religious services, such as occurred in Pevia's case, is not a substantial burden on religious exercise, in the absence of evidence suggesting that occasional missed services compromises an inmate's religious beliefs. *See Krieger v. Brown*, 496 F. App'x 322, 325 (4th Cir. 2012) (affirming judgment denying relief where plaintiff "failed to offer any explanation regarding the reason why indoor worship would compromise his religious beliefs"); *Lovelace v. Lee*, 472 F.3d 174, 187 (4th Cir. 2006) (concluding that plaintiff established substantial burden where he was deprived of congregational prayer during Ramadan for 24 of 30 days); *see also Williams v. Bragg*, 537 F. App'x 468, 468-69 (5th Cir. 2013) (concluding that the plaintiff did not establish substantial burden on his religious exercise by "occasional cancellation of Muslim services"); *Canell v. Lightner*, 143 F.3d 1210, 1211-14 (9th Cir. 1998) (explaining that "relatively short-term and sporadic" interference with religious exercise does not amount to a "substantial" burden).

Further, Pevia must establish that defendants intentionally interfered with his religious practices. Negligent interference with religious exercise is not remediable under either the First Amendment or the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. §§ 2000cc to 2000c-5.[6] *Lovelace*, 472 at 194; *see Meyer v. Teslki*, 411 F. Supp. 2d 983, 991 (W.D. Wis. 2006) (holding a prison official violates an inmate's rights under RLUIPA if he

2

**intentionally** and without sufficient justification denies an inmate his religiously mandated diet.) (emphasis added); *Lewis v. Mitchell*, 416 F.Supp.2d 935, 942–44 (S. D. Cal. 2005). In short, to state a valid claim under § 1983, Pevia must assert conscious or intentional interference with his free exercise rights. *Lovelace*, 472 F.3d at 201.

The parties agree that from the time of Pevia's release from special confinement housing on February 13, 2020, until congregate worship services were suspended in light of the COVID-19 pandemic on March 19, 2020, Pevia was not placed on the pass list for Native American services. The record reflects that, at most, he missed three services that he was otherwise eligible to attend.

Although Pevia filed religious preference forms, those were not then the proper vehicle for being returned to the pass list. Further, there is no evidence that the forms submitted by Pevia were received by Chaplain Lamp or the Native American worship facilitator, the two people with the authority to have Pevia added to the pass list. To be sure, Pevia's first ARP regarding this issue was found meritorious in part because certain internal procedures were not followed. But, this does not change the determination that no evidence exists that any of the named defendants acted to intentionally deny Pevia access to his religious services. Rather, it appears that there was a misunderstanding by Pevia as to which documents were necessary to effectuate his return to the pass list, and perhaps an inadvertent failure to properly construe and process the forms he submitted. Inadvertence and negligence do not state a constitutional claim, however.

As to Pevia's claim that Whiteman created a policy that HU 2 inmates could not attend worship services with inmates from HU 3 and HU 4, this allegation is also unavailing. First, even if such a policy existed, Pevia does not explain how that policy would prevent him from attending Native American worship services or how the policy substantially impacted his religious observance. Although defendants do not address this allegation specifically, the institutional response to ARP-0675-20 stated, contrary to Pevia's contention, that Pevia was permitted to attend congregate services with other HU 2 inmates.

Further, Pevia's proffered affidavit from inmate Adrian Ashton does nothing to advance his claim. Ashton states that in January of 2020, while Pevia was on special confinement housing, he and other Native American worshipers on HU 2 were prohibited from going to their weekly services due to Whiteman's alleged policy. ECF 18-1 at 7. However, sometime thereafter everyone on the housing unit who identified as a Native American worshiper, except inmate Norman Mayes, was transferred to HU 3. *Id.* at 3. Neither Ashton nor Pevia explains whether the inmates, once on HU 3, resumed Native American services, or how this conduct, which did not occur while Pevia was on HU 2, is relevant to Pevia's not being placed on the pass list for three weeks.

3

Presumably, the affidavit is offered in support of Pevia's contention that Whiteman created a policy that prevented all Native American worshipers on HU 2 from attending congregate services. However, Pevia also provided evidence that inmate Norman Mayes, a Native American who remained on HU 2, was nevertheless placed on the Native American worship pass list for March 19, 2020. ECF 18-1 at 9. This evidence contradicts Pevia's conclusory assertion that it was Whiteman's "policy," rather than a simple mix up in paperwork, that prevented Pevia from being added to the pass list and attending congregate services. As there is no evidence that Whiteman's alleged policy of prohibiting HU 2 inmates from worshiping with inmates from other housing units was the reason Pevia was not timely added to the pass list, Pevia's claim must fail.

The court does not dispute Pevia's sincerely held religious belief. But, Pevia fails to allege or demonstrate that the denial of congregate prayer on three occasions resulted in a substantial burden to his religious practice or that defendants acted intentionally to deprive him of his religious practice. For these reasons, his Free Exercise claim fails and Whiteman is entitled to summary judgment.

---

[6]The substantial burden analysis of Pevia's First Amendment claims is the same as the analysis conducted under RLUIPA, and RLUIPA affords plaintiffs a more demanding level of scrutiny if they establish a substantial burden. *Greenhill v. Clarke,* 944 F.3d 243, 250 (4th Cir. 2019); *Lovelace*, 472 F.3d at 186-87, 199-200.

In his Motion to Alter or Amend, Pplaintiff reiterates his claims regarding denial of Native American worship and his interpretation of the evidence before the court. He alleges that Whiteman was responsible for signing off on the pass list but destroyed the list so that it did not reach the Chaplain. ECF 25 at 2. He also explains that as a result of a Maryland Public Information Act request he learned that religious services were in fact available on March 20, 2020. *Id*. at 3. He clarifies that when inmate Mayes was permitted to attend Native American worship he was housed on Unit 2-C-tier, which is the mental health unit, and thus Mayes had different privileges than other inmates housed on Unit 2. *Id*. 4. Plaintiff questions why, after his first ARP was filed about the pass list, he was not immediately placed on the religious service pass list. *Id*. at 5.

4

A motion to alter or amend is governed by Fed. Rule of Civ. Proc. 59(e) and "need not be granted unless the district court finds that there has been an intervening change of controlling law, that new evidence has become available, or that there is a need to correct a clear error or prevent manifest injustice." *Robinson v. Wix Filtration Corp. LLC*, 599 F.3d 403, 411 (4th Cir. 2010). "Mere disagreement does not support a Rule 59(e) motion." *Hutchinson v. Staton*, 994 F.2d 1076, 1082 (4th Cir. 1993). The rule permits a district court to correct its own errors, "sparing the parties and the appellate courts the burden of unnecessary appellate proceedings." *Russell v. Delco Remy Div. of Gen. Motors Corp.*, 51 F.3d 746, 749 (7th Cir. 1995).

Rule 59(e) motions may not be used, however, to raise arguments which could have been raised prior to the issuance of the judgment, nor may they be used to argue a case under a novel legal theory that the party had the ability to address in the first instance. *See Russell*, 51 F.3d at 749; *Concordia College Corp. v. W.R. Grace & Co.*, 999 F.2d 326, 330 (8th Cir. 1993); *FDIC v. World Univ., Inc.*, 978 F.2d 10, 16 (1st Cir. 1992); *Simon v. United States*, 891 F.2d 1154, 1159 (5th Cir. 1990); *see also In re: Reese*, 91 F.3d 37, 39 (7th Cir. 1996) ("A motion under Rule 59(e) is not authorized 'to enable a party to complete presenting his case after the court has ruled against him.'") (quoting *Frietsch v. Refco, Inc.*, 56 F.3d 825, 828 (7th Cir. 1995)); 11 Wright *et al.*, *Federal Practice and Procedure* § 2810.1, at 127-28 (2d ed. 1995) ("The Rule 59(e) motion may not be used to relitigate old matters, or to raise arguments or present evidence that could have been raised prior to the entry of judgment."). Similarly, if a party relies on newly discovered evidence in its Rule 59(e) motion, the party "must produce a 'legitimate justification for not presenting' the evidence during the earlier proceeding." *Small v. Hunt*, 98 F.3d 789, 798 (4th Cir. 1996) (quoting *RGI, Inc. v. Unified Indus., Inc.*, 963 F.2d 658, 662 (4th Cir. 1992)).

In general "reconsideration of a judgment after its entry is an extraordinary remedy which should be used sparingly." *Pac. Ins. Co. v. Am. Nat. Fire Ins. Co.*, 148 F.3d 396, 403 (4th Cir. 1998) (citing Wright *et al.*, *Federal Practice and Procedure* § 2810.1, at 124 (2d ed. 1995)). Plaintiff has offered no justiciable reason to alter the court's previous findings. His Motion is clearly nothing more than an expression of his disagreement with the court's ruling. Therefore, I shall deny the Motion.

An Order follows.

/s/
Ellen L. Hollander
United States District Judge